___

SO ORDERED,

Judge Katharine M. Samson
United States Bankruptcy Judge
Date Signed: January 26, 2015

The Order of the Court is set forth below. The docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: CHARLES JEFFERSON AND SANDRA JEFFERSON | CASE NO. 11-51958-KMS |
| DEBTORS | CHAPTER 13 |
| CHARLES JEFFERSON AND SANDRA JEFFERSON | PLAINTIFFS |
| V. | ADV. NO. 11-05059-KMS |
| COMMUNITY BANK | DEFENDANT |

## MEMORANDUM OPINION AND ORDER

The matter before the Court is the Amended Complaint, (Adv. Dkt. No. 132), filed by debtor-plaintiffs Charles Jefferson and Sandra Jefferson (the "Jeffersons"), and the Answer, (Adv. Dkt. No. 134), filed by Community Bank. A trial was held on the complaint on July 21 and 22, 2014. (Adv. Dkt. No. 164). At the trial, John Anderson represented the Jeffersons and Ken Adcock Represented Community Bank. (Adv. Dkt. No. 164). After the Jeffersons rested their case, Community Bank moved for directed verdict in its favor as to all counts. The Court

granted the motion[1] in part for the reasons stated on the record at trial with respect to the Jeffersons' allegation that they had an oral agreement with Community Bank to modify and exclude certain collateral as security for the loans in question. The Court withheld ruling on the motion as to all other counts. The Court also invited the parties to submit post-trial letter briefs. Both parties submitted their briefs on August 5, 2014, (Adv. Dkt. Nos. 166, 167). Having considered the pleadings, the testimony at trial, the post-trial letter briefs, and the arguments of counsel, the Court finds that Community Bank's motion, construed as a motion for judgment on partial findings, is appropriate in this case and should be granted.

## I. JURISDICTION

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A) & (K).

## II. FINDINGS OF FACT

The Jeffersons filed for relief under Chapter 13 of the Bankruptcy Code[2] on August 25, 2011. (Dkt. No. 1). On November 15, 2011, they commenced an adversary against Community Bank to determine the validity, extent, and priority of its lien. (Adv. Dkt. No. 1). The Jeffersons' original attorney moved to withdraw as counsel on June 28, 2012. (Adv. Dkt. No. 30). The motion was granted on August 27, 2012. (Adv. Dkt. No. 34). Current counsel entered his appearance in the case on October 29, 2012. (Adv. Dkt. No. 38). The Jeffersons filed an amended complaint on September 12, 2013 to determine the extent, priority, and validity of

---

[1] As discussed more fully below, because there was not a jury trial in this case, the Court construes Community Bank's Motion for Judgment as a Matter of law under Rule 50 of the Federal Rules of Civil Procedure as a motion for Judgment on Partial Findings under Federal Rule of Civil procedure 52, applicable in this adversary via Federal Rule of Bankruptcy Procedure 7052.

[2] "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless noted otherwise.

Community Bank's interest in their property. (Adv. Dkt. No. 132). They contend that Community Bank only has a valid security interest in 861 Magnolia Road and 604 Ellisville Boulevard. (*Id.* at 2, ¶ 5). With regard to 886 Magnolia Road and 11 Carl Jones Road, the Jeffersons contend that the loan documents granting security interests in these properties contain forgeries of their signatures and are therefore invalid. (*Id.*) Further, the Jeffersons contend that the official check # 136483, in the amount of $4,000.00, issued by Community Bank and payable to Charles Jefferson also contains a forged endorsement and that the funds were applied without Charles Jefferson's consent to the incorrect accounts. (*Id.* at 2, ¶ 6).

**A.  The Loan Documents**

    **i.  The Jeffersons' Previous Loans**

Prior to the loan in question, Charles Jefferson obtained several loans and renewals from Community Bank. (*See* Exhs. 1–3). On May 21, 2003, the Jeffersons obtained a loan in the amount of $29,319.50, secured by a first mortgage on land located at 11 Carl Jones Road, a second mortgage on land and a rental home located at 886 Magnolia Road, and an assignment of wages from Jefferson Janitorial Services. (Exh. 1). Charles and Sandra Jefferson both signed the loan documents and the deed of trust for this loan. (*Id.*). On September 30, 2004, Charles Jefferson obtained two more loans from Community Bank. (Exhs 2–3). The first loan was in the amount of $10,127.00, and was secured by a mortgage on land located at 886 Magnolia Road. (Exh. 2). The second loan was in the amount of $42,607.63, and was secured by land located at 861 Magnolia Road. (Exh. 3). Charles Jefferson signed the loan documents and deed of trust for both loans. (*Id.*). Sandra Jefferson did not sign the loan documents, nor did she sign the deed of trust for either loan obtained on September 30, 2004. (*Id.*). The Jeffersons do not dispute their signatures on any of these loan documents, and the home address listed for the Jeffersons on

each document was 861 Magnolia Road.[3]

### ii. The September 2006 Loan Transactions

At trial, Charles Jefferson testified that he went into the loan office to sign three different loan packages in 2006 because the loan secured by 861 Magnolia Road was coming up for renewal. Charles Jefferson testified that those three packages were to consist of a loan for approximately $15,000.00; a loan for approximately $61,000.00; and a loan for approximately $195,000.00. The three loans constituted a refinancing of previous loans that had matured. Community Bank produced three separate packages of loan documents. (Exhs. 4–7). Those three packages—all dated September 28, 2006—include a loan in the amount of $15,292.00, secured by a first mortgage on the real property and mobile home located at 11 Carl Jones Road; a loan in the amount of $61,754.74, secured by a first mortgage on 886 Magnolia Road and a second mortgage on the real property and mobile home located at 11 Carl Jones Road; and a loan in the amount of $195,297.02, secured by a first mortgage on the home and real property located at 861 Magnolia Road and a first mortgage on a commercial building and lot located at 604 Ellisville Blvd. (*Id.*).

In each package, Charles Jefferson's signature and initials appear on the loan documents and both Charles and Sandra Jeffersons' signatures and initials appear on the accompanying deeds of trust. (*Id*). And, for the loan in the amount of $61,754.74, Charles and Sandra Jeffersons' signatures and initials also appear on a separate, corrected deed of trust conveying a security interest in the mobile home and real property located at "886 Magnolia Rd & 11 Carl Jones Rd." (Exh. 6). The original deed of trust contained in the loan package did not include the description for the mobile home located at 11 Carl Jones Road. (Exh. 5 at 4). Connie Smith, a

---

[3] 861 Magnolia Road is also listed as the Jeffersons' home address on the documents they are challenging. But, prior to filing for relief, the Jeffersons moved to 886 Magnolia Road, which is listed in their schedules as their personal residence. The Jeffersons abandoned 861 Magnolia Road in their bankruptcy.

loan assistant at Community Bank and certified notary public, testified at trial that the compliance department caught the missing description and returned the deed of trust to her. She also testified that she called the Jeffersons, who returned to the bank and initialed the description and initialed and signed the amended deed of trust. Charles Jefferson testified that he does not remember that conversation or returning to sign and initial the corrected document. In fact, Charles Jefferson testified that he only signed documents related to two of the three loan packages when he went into the bank on September 28, 2006. Specifically, he contended that he only signed the documents for the $195,000.00 loan and the $15,000.00 loan; not the documents for the $61,000.00 loan and not the separate, corrected deed of trust conveying the security interest in the mobile home and real property.[4] Sandra Jefferson did not testify at trial.

Connie Smith testified that she notarized the Jeffersons' signatures on the deed of trust for the $61,000.00 loan after witnessing Charles initial and sign the loan documents and both Charles and Sandra initial and sign the deed of trust. Charles Jefferson does not dispute Community Bank's assertion that he owes it a debt based upon the documents he is challenging. Instead, he asserts that the debt he owes is unsecured because Community Bank does not hold a valid lien[5] on the property securing the $61,000.00 loan due to the alleged forgery. (*See* Adv. Dkt. No. 132).

## B. The Check

Two years later, in August of 2008, Charles Jefferson obtained a separate loan from

---

[4] Charles Jefferson did testify that the mobile home description was not initially present in the original deed of trust related to the $61,000.00 loan.

[5] Charles Jefferson apparently signed a deed of trust granting Leroy Stokley a security interest in 886 Magnolia Road to ensure payment of a $31,000.00 debt owed to Leroy and Donna Stokley. (Exh. 9). The deed of trust was recorded in December of 2007. (*Id.*). The deed of trust the Jeffersons are challenging was executed in favor of Community Bank on September 28, 2006—more than a year prior to the execution and recording of the deed of trust in favor of Stokley. Nevertheless, Leroy Stokley testified that he was under the impression that he had a first lien on the property. Stokley testified that he did not have any title work done prior loaning Jefferson $31,000.00. He further testified that he still believes he has a first lien on the property, regardless of what Community Bank asserts.

Community Bank for $7,500.00. (Exh. 8). That loan was secured by a certificate of deposit owned by Leroy Stokley. (Exh. 8 at 6). Charles Jefferson testified at trial that he paid Stokley $4,000.00 towards the purchase of the certificate of deposit. The loan proceeds were divided into two checks, dated August 13, 2008: one check for $4,000.00 and one check for $3,500.00. (*Id.* at 1–4). Charles Jefferson testified that he obtained the check for $3,500.00, cashed it the same day, and repaid Stokley. But, he testified that he never saw or touched the check for $4,000.00 because the loan officer—Billy Bounds—was not at the bank when Jefferson picked up the loan proceeds. Jefferson stated that he left the bank without the $4,000.00 check and asked them to call when Bounds returned, but the bank never called him back. Leroy Stokley testified that he went to the bank with Jefferson, put up the certificate of deposit as collateral, and saw the secretary—Connie Smith—but was told Billy Bounds was out of the office. Stokley further testified that Jefferson obtained two checks; that the $4,000.00 one was left at the office; and that Jefferson took the $3,500.00 check downstairs, cashed it, and gave him the proceeds. He also stated that he saw Jefferson look at the $4,000.00 check and hand it back to Connie Smith, but that he did not see him sign it. Stokley admitted upon cross examination that he has had cataract surgery and corrective vision surgery on both of his eyes, and has experienced a torn pupil. He stated that he had vision problems in 2008 but can operate a vehicle.

      Billy Bounds testified that he was at the bank on the day of the loan and that he saw Charles Jefferson sign both checks. He also testified that Jefferson took the $3,500.00 check and left with Stokley without discussing how he wanted the $4,000.00 check to be applied to his outstanding loans. Bounds stated that he assumed Jefferson needed to get Stokley home and that he would return or call back later with instructions as to how to apply the proceeds from the $4,000.00 check. Approximately a week later, when Jefferson had failed to contact the bank,

Bounds testified that he attempted to call Jefferson approximately three times, and failed to reach him. Then, approximately two weeks after the check had been issued, Bounds had become uncomfortable holding onto the check so he applied the proceeds to two of Jefferson's other past-due loans with the bank in the manner he thought was most beneficial to Jefferson. Bounds testified that he contacted the chief executive officer of Community Bank and consulted with him regarding the most beneficial way to apply the funds to Jefferson's outstanding loans. Connie Smith testified that she witnessed Jefferson sign both checks before he left with Stokley and that Jefferson told her he would return to the bank. She also testified that Stokley was standing near the elevators, some distance away, when Jefferson signed the $4,000.00 check.

Both Charles Jefferson and Billy Bounds testified that the $4,000.00 check was to be applied to Charles Jefferson's other past-due loans with Community Bank. Bounds testified that, as a condition of the loan, Jefferson agreed to pay $4,000.00 of the proceeds towards some of his past-due loans. Charles Jefferson testified that he wanted the proceeds to be paid towards the refinancing of his house note, which at that time was 861 Magnolia Road. Bounds testified that, after consulting the bank's chief executive officer to ascertain how best to apply the funds, he applied the proceeds of the check to two past-due loans: a vehicle loan and the $61,000.00 loan secured by 886 Magnolia Road. He also testified that, when Jefferson returned to the bank and complained of that application, he told Jefferson he would reapply the proceeds of the $4,000.00 check to any loan Jefferson wanted, but Jefferson instead demanded the check back and left when he was told he could not have it.

The Jeffersons seek to have the loan documents granting Community Bank a security interest in 886 Magnolia Road and 11 Carl Jones Road declared invalid. Adv. Dkt. No. 132 at 2, ¶ 7). They also seek compensation for any damage that resulted from the alleged forgeries on

both the loan documents and the $4,000.00 check. (*Id.* at ¶ 8).

### III.   CONCLUSIONS OF LAW

**A.  Community Bank's Motion Construed as a Motion for Judgment on Partial Findings**

At the close of the Jeffersons' case, counsel for Community Bank moved for "directed verdict," which the Court will treat as a motion for judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure, applicable to this adversary through Rule 7052 of the Federal Rules of Bankruptcy Procedure.[6] The Court granted the motion in part at trial, and—pursuant to Rule 52(c)—reserved the right to hear all of the evidence before ruling on all other counts.[7] In deciding a motion for judgment on partial findings, "the Court is not required to draw any inferences in favor of the non-moving party, as would be required for a motion for judgment as a matter of law under Rule 50, but can make findings in accordance with its own view of the evidence." *In re Broome,* No. 11-50528, 2014 WL 61235, at *2 (Bankr. S.D. Miss. Jan. 8, 2014) (citing *Miles–Hickman v. David Powers Homes, Inc.,* 613 F. Supp. 2d 872, 880 (S.D. Tex. 2009)). Applying this standard, the Court now turns to each of the Jeffersons assertions.

**B.  Whether the Deed of Trust was Properly Acknowledged**

Under Mississippi law, an acknowledgment is "a formal statement, made by the person executing a deed to an official who is authorized to take the acknowledgment, that the execution of the deed was of the person's own free will and accord." *Estate of Dykes v. Estate of Williams,*

---

[6] "In a bench trial, the appropriate vehicle for dismissing a case as a matter of law at the close of plaintiff's evidence is a Rule 52(c) judgment on partial findings." *Weber v. Gainey's Concrete Prods., Inc.,* No. 97–31267, 1998 WL 699047, at *1 n. 1 (5th Cir. Sept. 21, 1998) (unpubl.) (citation omitted). *See also Holly v. Ziff (In re Ziff),* Civ. A. No. 3–93–0034–R, 1993 WL 669427, at *2 (N.D. Tex. Oct. 28, 1993) (treating appellee's motion for directed verdict, which applies in jury trials, as motion for judgment on partial findings pursuant to Rule 52(c), which applies in nonjury trials); *Soisson v. Hillebrandt (In re Hillebrandt),* No. 10–00068–NPO, 2011 WL 2447738, at *8 (Bankr. S.D. Miss. June 15, 2011) (treating motion for summary judgment asserted by defendant at close of plaintiff's case-in-chief as motion for judgment on partial findings pursuant to Rule 52(c)).

[7] Rule 52(c) states, in pertinent part: "The court may, however, decline to render any judgment until the close of the evidence." Fed. R. Civ. P. 52(c).

864 So. 2d 926, 931 (Miss. 2003). Mississippi interprets acknowledgments broadly: "an acknowledgment will not be held 'fatal' for an omission that can be filled in from the body of the deed itself." *Id.* And "a properly acknowledged deed [of trust] is presumptively authentic." *Morrow v. Morrow*, 129 So. 3d 142, 147 (Miss. 2013), *reh'g denied* (Jan. 16, 2014). Though not raised in the complaint or pre-trial order, the Jeffersons argued at trial and in their post-trial letter brief that the deed of trust for the $61,000.00 loan was not properly notarized. (Adv. Dkt. No. 167).

Miss. Code Ann. § 25-33-5 states that "[e]very notary public shall keep a fair register of all his official acts . . ."At trial, Connie Smith testified that she did not record the notarization in her register because she knew the Jeffersons. The Jeffersons argue that this violation of the Mississippi Code renders the deed of trust improperly acknowledged and the instrument invalid. (Adv. Dkt. No. 167). Community Bank argued in its post-trial letter brief that Smith's failure to record the notarization has no bearing on the validity of the notarization itself. (Adv. Dkt. No. 166 at 26–27). The Court agrees.

Acknowledgments have been held void when the notary lacked the qualifications, capacity, or authority to perform the notarization. *Cotton v. T.W. McConnell*, 435 So. 2d 683, 687 (Miss. 1983). But Miss. Code. Ann. § 25-33-5 does not indicate that a notarization not properly recorded in the notary's log book is void. Nor does it indicate that the notarized document is rendered defectively acknowledged due to the recordation failure. Indeed, the Mississippi Supreme Court has held that the mere failure to strictly follow form will not render an acknowledgment void. *Dykes,* 864 So. at 931("Notwithstanding the failure to strictly follow form, the acknowledgment contains all the necessary information and, therefore, should not be held fatal."). Thus, though Smith's failure to record the notarization may be considered a failure

to strictly follow form, the notarization itself in this case contains all the necessary information and was made by a person authorized to take the acknowledgment.[8] Thus, the deed of trust was properly acknowledged under Mississippi law and the Court now turns to the forgery claims.

## C.  The Jeffersons' Forgery Claims

### i.  The Deed of Trust

As noted above,[9] the challenged deed of trust is presumptively authentic because it was properly acknowledged, and that acknowledgment "imports verity and presumptively states the truth." *Thompson v. Shell W. E & P Inc.,* 607 So. 2d 37, 40 (Miss. 1992). This presumption may only be overcome by clear and convincing evidence. *Trustmark Nat'l Bank v. Sanders*, (S.D. Miss. 2013) (citing *Thompson.,* 607 So. 2d at 40). Clear and convincing evidence "is such a high standard that even the overwhelming weight of the evidence does not rise to the same level." *Sumler v. E. Ford, Inc.*, 915 So. 2d 1081, 1088 (Miss. Ct. App. 2005). Moreover, "the uncorroborated testimony of the grantor whose signature is in question . . . is generally held to be insufficient" to overcome the presumption. *Id.* (quoting *Mallory v. Walton,* 81 So. 113, 114 (Miss. 1919). Accordingly, Charles Jefferson's uncorroborated testimony alone does not constitute clear and convincing evidence sufficient to create a question of fact regarding the validity of the deed of trust in question. Further, the Jeffersons did not adduce any other evidence of the alleged forgery at trial. Moreover, Sandra Jefferson—a co-signor on the deed of trust— never testified at trial. Thus, the Jeffersons failed to carry their burden of showing that their signatures were forged by clear and convincing evidence. Accordingly, the Court finds that Community Bank is entitled to judgment on partial findings with respect to this count of the complaint. The Court now turns to the Jeffersons' allegation that Charles Jefferson's

---

[8] The Jeffersons do not contend that Smith was unauthorized to perform the notarization.

[9] *See* discussion *supra* at B.

endorsement of the $4,000.000 check was forged.

### ii. The $4,000.00 Check

"[T]he essential elements of forgery are: (1) drafting a false instrument, (2) fraudulent intent, and (3) culpability of instrument to effect fraud." *Telephone Man, Inc. v. Hinds County*, 791 So. 2d 208, 210 (Miss. 2001) (citing *Dunson v. State*, 78 So. 2d 580, 581 (Miss. 1955)). Forgery is a question of fact and "must be proven by clear and convincing evidence." *King v. King,* 760 So. 2d 830, 833 (Miss. Ct. App. 2000) (citing *Greenlee v. Mitchell,* 607 So. 2d 97, 106–07 (Miss. 1992)). In *Greenlee*, the plaintiff testified that she had not signed the document and that she never signed her name with a single "l." Evidence was put forth at trial showing that the alleged forger had previously spelled the plaintiff's name with a single "l" and her name was spelled correctly on all of her other checks as well as another document the plaintiff admitted to signing. *Greenlee,* 607 So. 2d at 106–07. Moreover, no other witnesses testified to seeing the plaintiff sign the documents. *Id.* In that case, the Mississippi Supreme Court found that the plaintiff proved the document had been forged by clear and convincing evidence. In *King,* the Mississippi Court of Appeals affirmed the Chancellor's finding of forgery where the alleged endorser testified that he did not sign the deed in question, no witnesses were put forth to contradict his testimony, and the Chancellor found the alleged endorser's testimony credible. *King,* 760 So. 2d at 833.

In this case, the only evidence the Jeffersons adduced at trial was the testimony of Charles Jefferson, who stated he never signed the check; and the testimony of Leroy Stokley, who stated he never saw Charles Jefferson sign the check. But two witnesses—Billy Bounds and Connie Smith—testified that they witnessed Charles Jefferson sign the $4,000.00 check. And, though Charles Jefferson stated that he never saw or touched the check, Leroy Stokley testified

that he saw Jefferson pick up the check, examine it, and replace it on Connie Smith's desk. Finally, though Stokley testified that he never saw Jefferson sign the check, he did testify that he had trouble with his eyes at that time and Connie Smith testified that Stokley was some distance away when Jefferson signed the check in front of her.

Based on the evidence presented at trial, the Court finds that the Jeffersons failed to carry their burden of showing by clear and convincing evidence that the $4,000.00 check was forged. Accordingly, Community Bank is entitled to judgment on partial findings with respect to this count of the complaint.

## IV.   CONCLUSION

The Jeffersons failed to carry their burden at trial. The deed of trust was properly acknowledged and the Jeffersons failed to overcome its presumptive validity by clear and convincing evidence. And the Jeffersons failed to show that the $4,000.00 check was forged by clear and convincing evidence. Accordingly, Community Bank is entitled to judgment on partial findings with regard to the remaining counts of the complaint and its *ore tenus* motion is well taken and should be granted in full.

It is therefore ORDERED and ADJUDGED that Community Bank's motion for judgment on partial findings is GRANTED.

## END OF ORDER ##